IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATTHEW WENTZ, | |
| Plaintiff, | |
| v. | Case No. 3:21-cv-00473-MO |
| PROGRESSIVE DIRECT INSURANCE COMPANY., | OPINION & ORDER |
| Defendant. | |

MOSMAN, J.,

This matter comes before me on Plaintiff Matthew Wentz's Motion for Attorney Fees [ECF 32]. For the reasons given below, I grant Wentz's motion with a few adjustments to his calculations.

## BACKGROUND

Plaintiff Matthew Wentz was injured in a hit-and-run in January 2020. Notice of Removal [ECF 1] Ex. 2 ¶¶ 7–8. Defendant Progressive is his insurer. Wentz alleged Progressive declined to pay proper benefits, thus breaching their contract and the implied covenant of good faith. *Id.* ¶¶ 9–23.

Progressive tells a different story: it withheld benefits only because Wentz refused to provide the records it had requested to investigate his claim. Resp. in Opp'n to Mot. for Att'y Fees [ECF 34] at 4–5. Wentz continued to protest Progressive's attempts to acquire this information throughout litigation, leading Progressive to file a motion to compel [ECF 9]. I

1 – OPINION & ORDER

granted this motion and found that Wentz's cooperation in discovery—or lack thereof—was not substantially justified. Op. & Order [ECF 15] at 3–4.

In March 2022, the parties reached a settlement. Stip. Ltd. J. of Dismissal [ECF 30]. This settlement resolved the case, with the exception of the issues Wentz raises in this motion.

## LEGAL STANDARD

In Oregon, a plaintiff is entitled to attorney fees "if settlement is not made within six months from the date proof of loss is filed with an insurer . . . and the plaintiff's recovery exceeds the amount of any tender made by the defendant" in the action. Or. Rev. Stat. § 742.061(1). Oregon courts interpret "proof of loss" liberally: "[a]ny event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as a 'proof of loss.'" *Scott v. State Farm Mut. Auto Ins. Co.*, 190 P.3d 372, 377 (Or. 2008).

## DISCUSSION

### I.  Whether Wentz Is Entitled to Attorney Fees

Progressive argues that Wentz is not entitled to attorney fees because he did not cooperate or provide adequate proof of loss until October 2021, less than six months before the case settled. Wentz claims he submitted proof of loss in March 2020, when he provided Progressive with a trove of documents. Mot. for Att'y Fees [ECF 32] at 4. Submitted from March through May 2020, these documents included bank statements, medical records, and a receipt for the Redbox DVD he was renting the night of the hit-and-run. Bowyer Decl. [ECF 33] Exs. 2, 7–8

However, several oddities surrounding Wentz's report raised red flags for Progressive. Wentz did not identify any witnesses to the accident, did not call 911, and did not visit urgent

care. Resp. to Mot. for Att'y Fees [ECF 34] at 7. Moreover, Progressive noted discrepancies between his verbal account of the hit-and-run and text messages he sent following the accident. *Id.* at 7–8. Seeking to independently verify Wentz's account of the hit-and run, Progressive sought to place him at the scene through cell site data. Sure enough, the case settled shortly in November 2021, shortly after Progressive received this cell site data.

Wentz attests that he did not provide cell site data earlier in the case because Progressive sought cell site data as part of a broader request for "information related to the cellular call detail, text message detail and tower cellular site information . . . for the time-period of January 27–31, 2020." Counsel Decl. [ECF 41] Ex. 5. Interpreting this request as requiring the disclosure of the content of his personal text messages, Wentz declined, insisting that the records first go to his attorneys so they could redact irrelevant personal information. Counsel Decl. [ECF 41] Ex. 6. Progressive did not accept this arrangement; it now explains that this was because Wentz "had no reasonable way to know what parts of the raw cell tower location data was pertinent" to its investigation. Def.'s Suppl. Br. [ECF 42] at 8.

At oral argument, I determined that a request for the content of Wentz's text messages would have been excessive and that compliance with such a request was not necessary to provide proof of loss. Mins. of Proceedings [ECF 39]. Progressive insisted that it never sought the content of Wentz's text messages and that Wentz refused its requests for geolocational data up until November 2021. Wentz disagreed, indicating he would have disclosed his cell site data if he knew that was all Progressive wanted. I requested supplemental briefing on the subject.

This supplemental briefing elicited record of an illuminating email conversation from July 2020. In this exchange, Progressive expressed that it believed "all information regarding everyone [Wentz] communicated with" from January 27 to January 29 would be relevant to its

3 – OPINION & ORDER

investigation, in addition to Wentz's cell tower site information from the day of the accident, January 28. Counsel Decl. [ECF 41] Ex. 11 at 3. Progressive asked whether Wentz agreed. *Id.* In Wentz's response, his attorney wrote:

> I don't believe all information regarding texts and calls between 1/27 and 1/29 are relevant. I do not think the content of any . . . of those calls or text messages are relevant. Should we determine that some might be relevant, we can absolutely reevaluate that. I do agree that the cellular tower information for 1/28 is relevant.

*Id.* at 2. Progressive responded as follows:

> Assuming it is even logistically possible [for the third-party cell site data provider] to route the information to your office, I still struggle with the concept of your office determining what is relevant to Progressive's investigation. Quick hypothetical that may be helpful: Let's say on 1/28 during the time period Matthew is texting JD, Patrick, Jen and Kimberly about the accident and being at urgent care, he is texting others but doesn't mention the accident? I'd find that very relevant.

*Id.* at 1. Counsel for Wentz suggested that the parties "take it one step at a time" and focus on gauging the feasibility of routing Wentz's cellular data to their office. *Id.*

In this exchange, Progressive indicated it would not be satisfied with mere geolocational data. Its hypothetical clearly hinged on being able to read the content of Wentz's text messages. And despite Wentz's assertion that he did not want to divulge text message content, Progressive did not try to clarify that it was only seeking geolocational data and call logs. Regardless of how Progressive defines text message detail now, this July 2020 exchange suggests that both parties were operating under the assumption that text message detail included the content of those text messages.

Furthermore, Progressive failed to provide evidence to the Court that it requested cell site data on its own. Wentz represented that he would be amenable to providing cell site data from the day of the accident, *id.* at 2, but Progressive never pursued this option.

Had Progressive done so, this case likely would have resolved prior to entering litigation. As soon as Wentz learned that Progressive would be amenable to the provision of cellular data

4 – OPINION & ORDER

that did not include text message content, he consented to its disclosure. Murray Decl. [ECF 43] Ex. 4 at 129, 133–44. The parties' dispute was settled shortly thereafter. Thus, a review of the record shows that Progressive's overzealous investigation and unclear communication—not a lack of cooperation from Wentz—are what prevented Progressive from obtaining the cell tower data it sought. Accordingly, I find that Wentz met his burden to provide proof of loss as of July 2020 and that the case's settlement over a year and a half later entitles him to attorney fees under Or. Rev. Stat. § 742.061.

## II.   Calculation of Fees

Fees awarded under Or. Rev. Stat. § 742.061(1) must be "reasonable." Wentz asks for $42,630.30 in attorney fees and $1,583.22 in costs. Bowyer Decl. [ECF 37] Exs. 7–8. Progressive claims Wentz's fee request is unreasonable and should be reduced.

### A. Mathematical Errors

First, Progressive claims that Wentz's request is unreasonable because it is inaccurate. Progressive has a point: roughly 87% of Wentz's fee entries in his motion contained multiplication errors. Resp. in Opp'n to Mot. for Att'y Fees [ECF 34] at 10–11; *see also* Murray Decl. [ECF 35] Ex. 7. In one instance, Wentz valued .2 hours of work billed at $205 an hour at over $2,000. Murray Decl. [ECF 35] Ex. 7 at 7. On reply, Wentz recognized his mistake and attached a corrected billing statement. Reply in Supp. of Mot. for Att'y Fees [ECF 36] at 6–7; Bowyer Decl. [ECF 37] Ex. 7. Progressive observes errors in this updated billing statement, too Def.'s Suppl. Br. [ECF 42] at 3–4. These errors do not make the fee petition unreasonable on its face, but I am reluctant to grant attorney fees for time spent on such sloppy calculations. Accordingly, I decline to award fees for the time counsel for Wentz spent drafting this motion.

5 – OPINION & ORDER

### B. Reasonableness of Counsel's Rates

Second, Progressive contends that the rates charged by Wentz's counsel are unreasonable because they are above median hourly rates for the area. Resp, in Opp'n to Mot. for Att'y Fees [ECF 34] at 12–13. Progressive bases this assertion on median rates compiled in a 2017 survey conducted by the Oregon State Bar. Though counsel's rates are higher than those medians, that discrepancy is largely explained by the economic inflation of the past few years. Moreover, a rate is not unreasonable merely because it is above the state's median. Accordingly, I find that counsel's rates are reasonable.

### C. Reasonableness of Support Staff's Rates

Third, Progressive argues the rates charged by Wentz's legal support staff are unreasonable. *Id.* at 12–13. Here, Progressive relies on the rates that the Oregon Department of Justice charges for the work of its paralegals and law clerks. True, Wentz's support staff bill at moderately higher rates than government support staff. But Progressive cites no law that indicates that government support staff sets a ceiling on reasonable rates. As such, I find that the rates charged by Wentz's support staff are not appear unreasonable.

### D. Fees for Motion to Compel

Fifth, Progressive posits it should not be charged for Wentz's response to its motion to compel and its related motion for attorney fees. *Id.* at 14–15. Progressive prevailed on that motion and was awarded attorney fees because Wentz's behavior was unjustified. My ruling today does not change my previous finding. I granted the motion to compel because Wentz had failed to provide critical medical information in litigation; here, I grant Wentz's motion for attorney fees because he did his part to provide proof of loss prior to litigation. Progressive's aggressive investigation in 2020 does not excuse Wentz's noncooperation in 2021. Because my

6 – OPINION & ORDER

ruling on the motion to compel still stands, I agree with Progressive that it would be an "absurdity" to force it to pay costs for a motion for which I already awarded costs. *Id.* at 14.

### E. Payment of Fees Since Beginning of Cooperation

Sixth, Progressive argues that it should not be required to pay fees for work done before my ruling on Progressive's motion to compel because of Wentz's poor cooperation until that point. *Id.* at 15. But as I explained above, Wentz's cooperation with Progressive has been reasonable throughout this case, with the exception of the period that necessitated Progressive's motion to compel. And I already penalized Wentz for his non-cooperation at that time by awarding Progressive with attorney fees for its motion to compel. Op. & Order [ECF 23]. Wentz's brief attempt to strong-arm Progressive into accepting its protective order does not negate his measured approach to the rest of this case.

### F. Open File Fee

Progressive raises one last objection to Wentz's fee petition in its supplemental briefing. It contends that Wentz has duplicated one of his charges: the statement of costs bills $200 as an open file fee, and the statement of fees bills $256 for time spent opening the file. Def.'s Suppl. Br. [ECF 42] at 3. But these charges are not duplicative. The former is the fee that Wentz had to pay for filing his complaint; the latter is the time that a legal assistant spent not only opening his file, but also "review[ing] information provided by [Wentz]" and "prepar[ing] correspondence." Bowyer Decl. [ECF 37] Ex. 8 at 1; *id.* Ex. 7 at 1.

## III. Application of a Multiplier

Wentz requests the application of a multiplier of 2.0 for his attorney fees. Mot. for Att'y Fees [ECF 32] at 9–10. In determining whether to award a fee multiplier, Oregon courts look at several factors, such as whether the case was brought on a contingency fee, whether counsel

obtained "exceptional success" for their client, "the difficulty and complexity of the issues involved in th[e] case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved." *Moro v. State*, 384 P.3d 504, 519 (Or. 2016) (internal quotation marks omitted). Federal courts apply attorney fee multipliers based on state law. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1996).

Wentz argues that a multiplier is appropriate because Progressive heavily litigated what Wentz saw as a simple case. Mot. for Att'y Fees [ECF 32] at 9–10. Here, Wentz points to *Beck v. Metropolitan Property and Casualty Insurance Co.*, No. 3:13-cv-00879-AC, 2016 WL 4978411, at *22–24 (D. Or. Sept. 16, 2016), in which the court applied a multiplier to penalize an insurer's over-aggressive litigation tactics. Though Progressive's poor communication about the information it needed from Wentz prolonged this case unnecessarily, nothing in the record suggests that Progressive took the kind of "disorganized or deliberately untimely approach" to litigation as the insurer in *Beck*. *Id.* at *22. There, the insurer used low-ball offers and investigations of fraud to prolong litigation well beyond its acceptance of coverage. *Id.* The same cannot be said here, where Progressive had reasonable suspicions as to whether it should accept coverage. Resp. in Opp'n to Mot. for Att'y Fees [ECF 34] at 7–9 (explaining inconsistencies with Wentz's accounts of the accident). Though Progressive's poor communication prolonged its investigation unnecessarily, it settled shortly after it verified Wentz's claim and accepted coverage. Accordingly, I find that Wentz has failed to show that Progressive's behavior was so egregious as to justify payment of a multiplier.

## CONCLUSION

For the reasons stated above, Wentz's Motion for Attorney Fees [ECF 32] is GRANTED in part and DENIED in part. I grant Wentz an award of $31,895.50 in attorney fees[1] and $1,583.22 in costs.

IT IS SO ORDERED.

DATED this 13th day of May, 2022.

_____
MICHAEL W. MOSMAN
Senior United States District Judge

---

[1] This includes the $42,630.30 from Wentz's updated bill of fees, Bowyer Decl. [ECF 37] Ex. 8, plus $128.30 due to the miscalculations Progressive noted in its supplemental briefing, minus $8,452.00 for time spent on the motion to compel, and minus $2,411.10 for time spent briefing this motion.

9 – OPINION & ORDER